Jill TINETTI, Plaintiff,

v.

Lee WITTKE, Sheriff Racine County, Jane Doe, a Racine County Matron whose name is unknown, County of Racine, Defendants.

No. 79-C-447.

United States District Court, E. D. Wisconsin.

Oct. 31, 1979.

Terry W. Rose, Cotton, Rose & Rose, Kenosha, Wis., for plaintiff.

Richard H. Kjeldgaard, Asst. County Corp. Counsel, Racine, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Plaintiff brought this civil action on June 19, 1979, for declaratory and injunctive relief restraining defendants from strip searching persons arrested for non-misdemeanor traffic violations absent probable cause to believe the offender is concealing weapons or contraband on his body. The facts are not in dispute and have been stipulated to by the parties.

On August 17, 1978, plaintiff, a resident of Colorado, was driving with her four children north on Highway I–94 in Racine County to her mother's home in New Berlin, Wisconsin. Plaintiff was arrested by a state police officer at about 11:30 p. m. for speeding. Because she did not reside in Wisconsin, plaintiff was informed by the officer that she would have to post a $40.00 cash bond. Plaintiff was unable to post the $40.00 cash bond, and the officer requested that she follow him to the Racine County Jail.

At the Racine County Sheriff's Department, plaintiff was booked, photographed and then taken to a room by defendant Jane Doe. Defendant Doe told plaintiff to remove her clothes, whereupon plaintiff refused, responding that she was not a common criminal but was being held solely due to her inability to post bail for her traffic offense. Defendant Doe then again told plaintiff to "strip," explaining that defendant would be performing a body search for contraband. Plaintiff complied, and when naked, was asked to bend over and spread her buttocks while defendant Doe visually inspected her genital and anal areas. Only plaintiff and defendant Doe were present in the room during the strip search. When defendant Doe had completed her examination, plaintiff was incarcerated in a cell for about two hours until her uncle posted the $40.00 cash bail.

Defendant Doe's strip search of plaintiff was executed pursuant to a written policy of the Racine County Sheriff's Department that all persons detained in the Racine County Jail, regardless of the offense, be subject to a strip search. The policy provided that no touching of detainees would occur, and that the searches would be conducted by guards of the same sex as the detainees. The policy was based on procedures recommended by national and statewide organizations experienced in problems occurring in jails.

This Court issued a preliminary injunction on August 10, 1979, enjoining the defendants from undertaking, exploring, maintaining or adopting any policies, procedures, practices or acts of strip searching persons charged with non-misdemeanor traffic offenses, except where law enforcement officials have probable cause to believe that contraband or weapons are being concealed on the offender's body. In response to this injunction, the Sheriff of Racine County modified the policy of the Racine County Jail to prohibit strip searching non-misdemeanor traffic violators held in jail before arraignment or trial unless there is probable cause to believe that contraband or weapons are being concealed. The Sheriff approved the same policy as applicable to a new jail facility in Racine County which, when opened in November, 1979, will house non-misdemeanor traffic violators awaiting a court appearance in a holding cell rather than with the general prison population.

Defendants filed a motion for summary judgment on August 28, 1979. Plaintiff had earlier, on August 15, 1979, also filed a motion for summary judgment. Summary judgment is appropriate only if, after viewing all of the pleadings, depositions, admissions, answers to interrogatories and affidavits, this Court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting Corp.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

Defendants contend, in support of their motion, that this case is moot because the strip-search policy challenged by plain-

tiff has been stopped and there is no reasonable likelihood of its reoccurrence. While no case or controversy generally exists when allegedly illegal conduct has ceased, a case may be considered as not moot when the issue is "capable of repetition yet evading review." *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *see Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The plaintiff must show, however, that there is some cognizable danger of recurrent violations that is more than a mere possibility. *United States v. W. T. Grant Company*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Specifically, the challenged action must be too short in duration to be fully litigated prior to its cessation, and there must be a reasonable expectation that the complaining party would be subject to the same action again. *Weinstein v. Bradford, supra; Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

This Court finds, from the undisputed evidence, that the present situation is one capable of repetition yet evading review. Although the Racine County Sheriff has changed the strip search policy in conformance with this Court's preliminary injunction, the former policy could be reinstated by the Sheriff at any time. Furthermore, if a new Sheriff is elected, nothing would preclude him, absent the present preliminary injunction, from reverting to the routine practice of strip searching detainees. And while the new Racine jail facility purports to segregate traffic violators from the general prison population, economic or spatial limitations could cause such policy to be ignored until further challenge. The resulting mixture of prisoners could cause an inadvertent reversion to the strip searching of all detainees.

The occurrence of citations for traffic violations is certainly not a rarity in this society. Accordingly, the arrest of traffic violators for unpaid fines or other minor offenses will occur frequently. In addition, the possibility of nonresident traffic violators being unable to post the required bond is also high. As such, there is more than a mere possibility that plaintiff, or any other traffic violator, would be subject to a strip search while awaiting an arraignment or the posting of bail.

In addition to being capable of repetition, the present situation is one which may also evade review. While the total time involved in a strip search is minimal, the humiliation and embarrassment experienced by the offender are much more long lasting. If this Court holds the case moot, thus precluding plaintiff from being heard on the merits, there is nothing to prevent defendants from reinstating the strip search policy until another challenge arises. "Where . . . state action or its imminence adversely affects the status of private parties, the courts should be available to render appropriate relief and judgments affecting the parties' rights and interests." *Super Tire Engineering Company v. McCorkle*, 416 U.S. 115, 125, 94 S.Ct. 1694, 1699, 40 L.Ed.2d 1 (1974).

Furthermore, "the voluntary abandonment of a practice does not relieve a court of adjudicating its legality, particularly where the practice is deeply rooted and long standing." *Gray v. Sanders*, 372 U.S. 368, 376, 83 S.Ct. 801, 806, 9 L.Ed.2d 821 (1963).

The challenged practice has been in effect for several years. It was based on procedures recommended by reputable organizations, familiar with prison problems, which are based in New York, Washington, D. C., as well as Madison, Wisconsin. Defendants did not alter their policy until a preliminary injunction was issued against its maintenance. Indeed, the defendants argued in their brief opposing the preliminary injunction that the policy was constitutional and should be continued. Because of the long-standing use of the strip search procedure and defendants' repeated earlier claim that the policy should be continued, the voluntary cessation of its use should not leave the defendants "free to return to . . . [their] old ways." *United States v. W. T. Grant Company*, 345 U.S. at 632, 73 S.Ct. at 897. Defendants' motion for sum-

mary judgment must be and is hereby denied.

██ Proceeding to the plaintiff's claim, this Court agrees with plaintiff that, as a matter of law, the strip searching of plaintiff, a non-misdemeanor traffic violator who was incarcerated due to the inability to post cash bail, was an unconstitutional denial of the personal liberty guaranteed her by the United States Constitution. The Fourth Amendment of the United States Constitution provides that:

> [t]he right of the people to be secured in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Although the prevalent rule is thus that searches or seizures may not be made without a warrant, an exception exists allowing a warrantless search incident to a lawful custodial arrest. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The mere fact that a person is validly arrested, however, does not mean that he may be subject to any search which the arresting officer feels is necessary. *United States v. Mills*, 153 U.S.App.D.C. 156, 472 F.2d 1231 (D.C.Cir. 1972). Such searches have traditionally been justified by the reasonableness of the discovery of, (1) weapons or instruments of escape; or (2) evidence which could be otherwise concealed or destroyed. *United States v. Edwards, supra; United States v. Mills, supra.*

Neither of these justifications are present in the instant case. Plaintiff was not searched by the arresting officer, who apparently felt that there was no reason to believe plaintiff carried any weapons on her person or in her motor vehicle. Plaintiff's offense itself, a non-misdemeanor traffic violation, generally does not involve the use of a weapon.

Furthermore, the discovery of evidence was not a sufficient justification for the search of plaintiff, given the type of offense she committed. The only materially probative pieces of evidence as to plaintiff's exceeding of the speed limit were the reading on the speedometer of the plaintiff's automobile, as remembered by plaintiff or her passengers, and the reading on the officer's speed-measuring device. As such, plaintiff had no reason to conceal, and the officer had no reason to suspect, the existence of any evidence which could be discovered through a strip search of plaintiff.

██ In evaluating the propriety of an act alleged to have constituted an "unreasonable" search within the meaning of the Fourth Amendment:

> [T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests . . . the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against an "objective standard," whether this be probable cause or a less stringent test. *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–8 (1979).

The undisputed facts show that plaintiff was strip searched as a part of a routine, long-standing policy of defendants, without consideration as to whether probable cause existed to believe that she was concealing weapons or contraband. While law enforcement personnel do have a legitimate interest in discovering weapons or contraband, that interest cannot be indiscriminately satisfied by the strip searching of non-misdemeanor traffic violators where there is no reason to believe that the violators have concealed any such articles. The intrusion on one's personal dignity occasioned by such searches requires that some justifiable basis exist.

██ The basic error in defendants' across-the-board use of strip searches was

recently articulated in *Sala v. County of Suffolk*, (E.D.N.Y. 11/28/78) (unpublished decision), which involved a fact situation very similar to that of the present case. One of the plaintiffs in *Sala* had been arrested for failure to pay a $15 speeding fine. The other plaintiff had been arrested for failure to respond to a summons which had been sent to the wrong address. Both had been strip searched in the same manner as plaintiff, and pursuant to a policy of routine searches. In holding the policy unconstitutional, the court, in an oral decision, stated:

> Here on one side of the balance scale we have the intrusion into personal dignity and privacy in a way that for some people at least might cause serious emotional distress. A search of [this] . . type . . . including the visual inspection of the anal and genital areas, has been characterized by various witnesses here, and by judges in some other cases, as demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission . . . . The search procedure is unconstitutional, because, while it is rationally related to the objective sought, discovering weapons, it is not the least intrusive means which could accomplish the same result . . balancing all of [the] factors, the defendant's application of the search procedure . . . as a matter of routine, to all persons brought to the Happaque detention facilities on warrants to appear before a district court judge on petty offenses, has no reasonable nor rational basis, constitutes a denial of liberty without due process of law, violates the Fifth and Fourteenth Amendments, and also constituted an unreasonable search in violation of the Fourth and Fourteenth Amendments of the constitution. *Sala v. County of Suffolk* (E.D.N.Y.1978), transcript pp. 715(a), 717(a), 719(a).

Unlike pretrial detainees charged with a criminal offense, there is little reason to suspect that traffic violators will conceal contraband or weapons, particularly when they are incarcerated solely due to their inability to post cash bail. Defendants' blanket strip search policy cannot be maintained when to do so intrudes into the personal dignity of traffic violators without any relation to the likelihood of his concealment of weapons or contraband. For the foregoing reasons, the policy, as a matter of law, violates the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Plaintiff's motion for summary judgment must be and is hereby granted.

■ Plaintiff seeks not only declaratory relief adjudging defendants' strip search policy unconstitutional as applied to her, but also permanent injunctive relief. Although plaintiff brought her claim as an individual rather than as part of a class action, the general rule is that where requested injunctive relief is appropriate when it will benefit the claimant and all others subject to the practice under attack. *Sandford v. Coleman Realty Company, Inc.*, 573 F.2d 173 (4th Cir. 1978). Thus, a permanent injunction may issue from this Court applying to plaintiff as well as other non-misdemeanor traffic violators who might be affected by defendants' strip search policy.

■ Accordingly, for the reasons given, this Court declares that the defendants' subjection of plaintiff, a non-misdemeanor traffic violator incarcerated only due to the inability to post cash bond, to a strip search without probable cause to believe that she was concealing weapons or contraband on her body was a violation of the plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Furthermore, this Court permanently enjoins and restrains defendants from undertaking, enforcing, maintaining or adopting any policies, procedure, practices or acts of strip searching persons charged with traffic offenses which are not misdemeanors except where law enforcement officers have probable cause to believe that contraband or weapons are being concealed on the person of the traffic violator.