HENDERSON, Senior Circuit Judge:
 

 This bankruptcy appeal results from a lengthy dispute concerning the sale and subsequent operation of a Florida corporation. The United States Bankruptcy Court for the Southern District of Florida rejected a claim by the purchasers of this corporation that debts owed by the former owner were not dischargeable in bankruptcy. In so holding, the court held that the issue of the debtor’s liability already had been determined in the debtor’s favor by a prior Illinois state court judgment and that collateral estoppel precluded relitigation of this issue. The United States District Court for the Southern District of Florida affirmed the bankruptcy court and the purchasers appealed to this court. We hold that the bankruptcy court failed to make adequate inquiry into the issues actually resolved by the prior Illinois litigation and consequently reverse the judgment of the district court.
 

 On November 10, 1978, the appellee, Jack Austin, and his wife sold fifty-two percent of the outstanding stock in Austin’s Rack, Inc. (Austin’s Rack) and several other Florida corporations to the appellant, B.J. Apparel Corp. (B.J. Apparel), an Illinois corporation controlled by the appellants Gerald Balbirer and Norman Brainin. The contract of sale contained a warranty by Austin that all financial reports reflected the actual financial condition of Austin’s Rack. The parties also signed an employment agreement in which Austin was retained as an employee of Austin’s Rack. The employment agreement authorized Austin’s Rack to discharge Austin for cause or for six other specified grounds. The two reasons pertinent to this appeal are (1) Austin’s “participation in any conduct which directly threatens serious injury to the reputation or welfare” of Austin’s Rack and (2) Austin’s breach of any provision of the contract of sale between Austin and B.J. Apparel.
 

 This relationship began to deteriorate in 1979. B.J. Apparel determined that the financial reports provided by Austin on the day of sale overstated the net worth of Austin’s Rack by approximately $100,-000.00. That year Austin also allegedly made false accusations about the financial practices of B.J. Apparel and its principals to Opelika Manufacturing Corp. (Opelika), a primary creditor of B.J. Apparel. The appellants complain that these accusations damaged the previously amicable business relationship between Opelika and B.J. Apparel.
 

 Austin’s Rack terminated Austin’s employment as a result of these events and filed suit against Austin in the Circuit Court of Cook County, Illinois on October 19, 1979. The suit charged Austin with breach of the employment contract by misrepresenting the net worth of Austin’s Rack to B.J. Apparel and by making false accusations of financial misconduct by Austin’s Rack and its principals. The parties engaged in no discovery in the Illinois case and the only issue actually litigated was personal jurisdiction.
 

 On November 1, 1979, Austin filed suit against Austin’s Rack in the Circuit Court of Dade County, Florida, seeking damages
 
 *1526
 
 for breach of contract. The parties conducted full discovery and this case proceeded to trial in March of 1980. On April 8, 1980, the Florida court rendered judgment in favor of Austin. Austin’s Rack appealed this judgment to the Florida District Court of Appeal on May 7, 1980.
 

 On September 16, 1980, Austin’s Rack stipulated to a dismissal of its Illinois litigation and on September 19, 1980, the Illinois court entered a judgment dismissing the action with prejudice. The appellants maintain that they only agreed to dismiss the lawsuit without prejudice and that they intended to pursue their claims against Austin in the Florida courts. Both Balbirer and Brainin produced affidavits that they did not intend to abandon their cause of action and that their Illinois counsel erred in stipulating to a dismissal with prejudice. No effort was made to modify the Illinois judgment.
 

 On April 7, 1981, the Florida District Court of Appeal reversed the judgment of the trial court and ordered judgment entered in favor of Austin’s Rack. The appellate court found that Austin had misrepresented the value of Austin’s Rack to B.J. Apparel and that this misrepresentation justified the termination of Austin’s employment.
 
 Austin’s Rack, Inc. v. Austin,
 
 396 So.2d 1161 (Fla.3d Dist.Ct.App.),
 
 cert. denied,
 
 402 So.2d 607 (Fla.1981).
 

 Austin filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida on June 14, 1982. B.J. Apparel and its principals filed separate adversary complaints against Austin, seeking a determination that certain debts owed by Austin to them were nondischargeable in bankruptcy. B.J. Apparel contended that damages arising from Austin’s misrepresentation of the value of Austin’s Rack were not discharge-able under the provisions of 11 U.S.C. § 523(a)(2) and that any damages occurring because of Austin’s slanderous statements to Opelika were not dischargeable pursuant to 11 U.S.C. § 523(a)(6). The company also sought leave to foreclose a mortgage it held on land owned by Austin. Balbirer’s and Brainin’s complaint contained a similar slander charge. The bankruptcy court consolidated these adversary proceedings for trial.
 

 B.J. Apparel moved for partial summary judgment alleging the preclusive effect of the judgment from the Florida District Court of Appeal. On the date of trial in the bankruptcy court, Austin asserted the affirmative defense of collateral estoppel based on the dismissal of the Illinois lawsuit. After considering Brainin’s testimony, the record of the Florida litigation, and the Illinois order of dismissal, the bankruptcy court held that the appellants were estopped by the Illinois judgment from pursuing their claims of relief against Austin. The court refused to accord preclusive effect to the Florida judgment because it was not in “irreconcilable conflict” with the Illinois judgment and the Illinois judgment purported to resolve all disputes between the parties. The United States District Court for the Southern District of Florida affirmed the bankruptcy court’s judgment and the appellants filed this appeal.
 

 In this case, we are confronted with the difficult task of applying the rules of collateral estoppel from two seemingly contradictory judgments. We note at the outset that application of collateral estoppel in a particular case is a matter of trial court discretion,
 
 Deweese v. Town of Palm Beach,
 
 688 F.2d 731, 733-34 (11th Cir.1982), but that this court exercises plenary review over the rules governing collateral estoppel.
 

 The basic test for collateral estoppel or issue preclusion was recently articulated by this court in
 
 In re Held,
 
 734 F.2d 628, 629 (11th Cir.1984):
 

 The doctrine of collateral estoppel bars relitigation of an issue if three requirements are met:
 

 (1) that the issue at stake be identical to the one involved in the prior litigation;
 

 (2) that the issue have been actually litigated. in the prior litigation; and
 

 (3) that the determination of the issue in the prior litigation have been a critical
 
 *1527
 
 and necessary part of the judgment in that earlier action.
 

 We must first apply this test to each state judgment and then address any conflict between them.
 
 [1]
 

 The Illinois judgment was a consent decree dismissing the action with prejudice. A litigant can be collaterally estopped from pursuing an issue by a consent decree if the parties intended the decree to resolve that issue. Courts have recognized, however, that parties often enter into consent judgments for reasons other than a disposition of the issues in the case. In that event, the second and third requirements articulated in
 
 In re Held
 
 are not satisfied and the consent judgment does not settle the issues for future litigation.
 

 The seminal case in this issue is
 
 United States v. International Building Co.,
 
 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953). In that case, a taxpayer claimed that a prior consent decree stipulating that he owed no tax deficiency for three tax years barred the Internal Revenue Service from litigating a similar deficiency claim for subsequent tax years. The Supreme Court rejected this argument because the issue of the tax liability had not been litigated and determined on the merits in the consent decree. The Court concluded:
 

 Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration. Certainly the [consent] judgments entered are res judi-cata of the tax claims for the years 1933, 1938 and 1939, whether or not the basis of the agreements on which they rest reached the merits. But unless we can say that they were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits.
 

 345 U.S. at 505-06, 73 S.Ct. at 809, 97 L.Ed. at 1188.
 
 See also Lawlor v. National Screen Service Corp.,
 
 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).
 

 The former Fifth Circuit Court of Appeals utilized an identical approach in determining the collateral estoppel effect accorded to consent judgments. In
 
 Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,
 
 575 F.2d 530 (5th Cir.1978),
 
 [2]
 
 the plaintiff in a patent dispute dismissed its lawsuit with prejudice as part of the settlement of an unrelated case. A year later, the defendant in the first case filed suit charging the original plaintiff with patent infringement and alleged that infringement was established by collateral estoppel because of the dismissal of the first action. The court disagreed reasoning that the parties did not intend the dismissal to resolve the infringement question on the merits.
 

 [A] consent decree is neither ignored nor treated solely as a contract, although, in considering the finality to be given it, the fact that it originated as a negotiated settlement is considered. Whatever type of repose is sought to be invoked as a result of a judicial consent decree, a court should take into account the fact that it was rendered by consent and determine its impact by the issues actually intended to be precluded by the parties.
 

 575 F.2d at 539. A similar view was taken in
 
 Anderson, Clayton & Co. v. United States,
 
 562 F.2d 972, 992 (5th Cir.1977),
 
 cert. denied,
 
 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978): “When .one party ...
 
 *1528
 
 concedes or stipulates the issue upon which the court bases its judgment, the issue is not conclusively determined for purposes of collateral estoppel unless it is clear that the parties so intended.”
 

 Other courts of appeal have followed this same course.
 
 See, e.g., Spilman v. Harley,
 
 656 F.2d 224, 228 (6th Cir.1981) (“Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment ... or hold a hearing if necessary.”);
 
 Matter of Ross,
 
 602 F.2d 604, 608 (3d Cir.1979) (“A determination of whether the [elements of collateral estoppel] are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law.”).
 

 Therefore, we hold that a consent judgment cannot constitute collateral es-toppel unless the party pleading collateral estoppel proves from the record of the pri- or case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue. In the case at bar, the bankruptcy court considered only the Illinois judgment on its face and did not inquire into the intent of the parties. For this reason, it is necessary to remand the case for a hearing on the intent behind the Illinois dismissal.
 

 Such an inquiry will not, as Austin maintains, violate the dictates of full faith and credit or federal-state comity. Such an investigation in no way challenges the validity of the Illinois judgment or circumvents its effect. On remand, the bankruptcy court need only determine what issues, if any, actually were resolved by the Illinois judgment. The court would then decide whether to declare those issues established in the present litigation as a matter of collateral estoppel.
 

 We next turn to the collateral estoppel effect of the second state court judgment from the Florida District Cburt of Appeal. The bankruptcy court did Aot analyze the issue-preclusive effect of this judgment because it concluded that all disputed matters were settled by the prior Illinois judgment. Since the bankruptcy court erred in giving collateral estoppel effect to the Illinois judgment, the court also must reconsider the collateral estoppel consequences of the Florida judgment.
 

 It is the general rule that when two judgments conflict, the subsequent judgment controls for purposes of collateral estoppel.
 
 See Garden Suburbs Golf & Country Club v. Murrell,
 
 180 F.2d 435, 436 (5th Cir.) (per curiam),
 
 cert. denied,
 
 340 U.S. 822, 71 S.Ct. 54, 95 L.Ed. 603 (1950);
 
 Donald v. J.J. White Lumber Co.,
 
 68 F.2d 441, 442 (5th Cir.1934).
 
 See also Reimer v. Smith,
 
 663 F.2d 1316, 1327 (5th Cir.1981). As such, the Florida judgment would control for collateral estoppel purposes should there be any conflict with the Illinois judgment.
 

 With this record, we cannot determine whether any such conflict does exist. The Florida judgment clearly establishes that Austin misrepresented the value of Austin’s Rack when he sold the corporation to B.J. Apparel.
 
 See Austin’s Rack, Inc. v. Austin,
 
 396 So.2d at 1163. We cannot come to a similar conclusion as to the Illinois judgment. No court has yet conducted a full hearing into the intent of the parties when they consented to that judgment. Until this inquiry is made, we cannot say what issues actually were resolved by that judgment and thus whether there is any conflict.
 

 Accordingly, we reverse the judgment of the district court with instructions to remand this ease to the bankruptcy court for further proceedings. On remand, the bankruptcy court should conduct a hearing as to the parties’ intent in consenting to the dismissal of the Illinois case. The court should consider the record of the Illinois litigation and any extrinsic evidence of
 
 *1529
 
 fered by the parties. After such an inquiry, the bankruptcy court must determine what issues, if any, were resolved by the Illinois judgment. The court should next determine whether any conflict exists between the Illinois and Florida judgments and resolve any conflicts in favor of the latter judgment. Finally, the court should decide whether to accord collateral estoppel effect to the issues actually settled by the earlier litigation.
 
 See Deweese v. Town of Palm Beach,
 
 688 F.2d 731, 733-34 (11th Cir.1982).
 

 As a final matter, the appellants ask that we enter a final judgment on the merits in their favor based on the evidence in the existing record. Since there has not yet been a full fact-finding, we decline their request. These factual findings should be made in the first instance by the bankruptcy court.
 

 The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.
 

 [1]
 

 . The appellants were not actual parties to either the Illinois or the Florida state court cases. Nonetheless, they are in privity with an actual party, Austin’s Rack, and, as such, are bound by the collateral estoppel effect of those two judgments.
 
 See Southwest Airlines Co. v. Texas International Airlines,
 
 546 F.2d 84, 95 (5th Cir.),
 
 cert. denied,
 
 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977);
 
 Drier v. Tarpon Oil Co.,
 
 522 F.2d 199, 200 (5th Cir.1975) (per curiam); As-
 
 tron Industrial Associates, Inc. v. Chrysler Motors Corp.,
 
 405 F.2d 958, 961 (5th Cir.1968).
 

 [2]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.