**Jaroslaw DOBROWOLSKYJ,**
**Plaintiff-Appellant,**

v.

**JEFFERSON COUNTY, KENTUCKY;**
**et al., Defendants-Appellees.**

Nos. 86–5234, 86–5451.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1987.

Decided July 13, 1987.

Rehearing Denied Aug. 17, 1987.

William M. Radigan (argued), Walker, Radigan and Zeller, Louisville, Ky., for plaintiff-appellant.

Allen P. Dodd, III, Louisville, Ky., R. Allen McCartney (argued), for defendants-appellees.

Before LIVELY, Chief Judge, BOGGS, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Plaintiff-Appellant Jaroslaw Dobrowolskyj was arrested on a misdemeanor charge in Jefferson County, Kentucky, and strip searched while he was being held at the Jefferson County Jail awaiting a lawyer to post his $100 bond. He sued the jail, its director, and the county, claiming that their policy of strip searching pretrial detainees was unconstitutional. The district court found that the constitutionality of Jefferson County's strip search policy had already been settled by the consent decree in *Tate v. Frey*, No. 75–0031(A) (Oct. 1, 1985), a class action which had challenged many procedures at the jail. The court denied Dobrowolskyj's motions for declaratory judgment, summary judgment and directed verdict. The case was submitted to a jury which returned a verdict for the defendants. Dobrowolskyj appeals the district court's denial of his motions. We hold that Jefferson County's strip search policy is constitutional and accordingly, affirm the rulings of the district court.

Dobrowolskyj, a Michigan resident, was arrested at the Jefferson County Courthouse on April 17, 1984, on a warrant sworn out by his ex-wife. He was charged with menacing, a misdemeanor under Kentucky law. He was taken to the Jefferson County Jail where he had to wait for several hours before he could find a local lawyer to post bond for him. He was first placed in the front holding cell in the basement, the area where arrestees were initially detained during processing by the Department of Corrections and determination as to the likelihood of their being released on bond. If release was imminent, the person would remain in the holding cell, rather than being classified and transferred to one of the main sections of the jail. Detainees in this area were subjected only to a frisk or "pat down" search.

Unfortunately for Dobrowolskyj, other detainees arrived at the jail while he was being held, and the front holding cell, which had a capacity for only twenty prisoners, became overcrowded. Approximately six prisoners, including Dobrowolskyj, had to be moved to the rear security area where the general jail population was housed. The rear security area in the basement was the main traffic area of the jail, through which all inmates were moved on their way to and from court appearances and the upper sections of the jail. This area thus contains a cross-section of the jail's population, including inmates from the maximum security areas. Dobrowolskyj was strip searched before he was moved to the rear area. The movement and search were in accordance with departmental policy which had been approved by the district court in the *Tate v. Frey* consent decree.

The relevant part of the policy read:

All inmates will be thoroughly searched each time an inmate passes from one security area to another, being prepared for transportation both between floors and externally, and upon admission to the Department. All newly admitted inmates to the Department will be frisk searched upon arrival to the Department and strip searched immediately prior to the movement of the inmate to rear security, female section or other areas of the Department.

The policy also provided that all strip searches would be conducted in private with only one officer unless the inmate's behavior indicated that more than one officer might be required. The officers were always to be of the same sex as the inmate. Strip searches were visual only. The officer was not to touch the inmate, although the policy indicated that body orifices were to be closely inspected. Any manual search was considered a body cavity search, to be carried out only by medical personnel after authorization by the senior officer in charge of the area. Body cavity searches required a reasonable suspicion that the inmate was concealing contraband. Strip searches did not require the same reasonable suspicion, but were conducted automatically upon movement from one security area to another.

Dobrowolskyj sued the jail, arguing that the automatic strip search without reasonable suspicion violated the fourth amendment. The district court held that the constitutionality of the search policy had been settled by the consent decree in *Tate v. Frey* approving the policy. The court denied Dobrowolskyj's motion for declaratory judgment. The court also denied Dobrowolskyj's motions for summary judgment and directed verdict on the question of liability, and the case was tried to a jury which returned a verdict for the county. Dobrowolskyj appeals the district court's rulings on the constitutionality of the search policy.

The Supreme Court considered the issue of strip searches briefly in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Court overturned a lower court decision holding that routine strip searches of pretrial detainees conducted after contact visits violated the fourth amendment absent probable cause to believe that the inmate was concealing contraband. The Court held that these searches were not unreasonable and thus did not violate the fourth amendment. *Bell* sets out a balancing test for reasonableness, stating that the fourth amendment.

> requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. The Court held that the searches after contact visits could be conducted without probable cause to suspect that a particular inmate was concealing contraband because the unique and serious security interests of the detention facility outweighed the privacy interest of the inmate. *Id.* at 559–560, 99 S.Ct. at 1884–85.

*Bell* has not been read as holding that the security interests of a detention facility will always outweigh the privacy interests of the detainees. The balancing test must be applied in each case and the particular search must still be reasonable under the fourth amendment. The majority of the circuits have held unconstitutional blanket strip search policies of all inmates including those detained only on minor misdemeanor charges or traffic offenses. These courts have held that automatic strip searches of all detainees violate the fourth amendment without a reasonable suspicion, based on the nature of the charge, the characteristics of the detainee, or the circumstances of the arrest, that the detainee is concealing contraband. *See Weber v. Dell*, 804 F.2d 796, 802 (2nd Cir.1986); *Jones v. Edwards*, 770 F.2d 739 (8th Cir. 1985); *Stewart v. Lubbock County, Texas*, 767 F.2d 153 (5th Cir.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman*, 746 F.2d 614 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Fann v. City of Cleveland*, 616 F.Supp. 305 (N.D.Ohio 1985); *Tinetti v. Wittke*, 479 F.Supp. 486 (E.D.Wis. 1979), *aff'd*, 620 F.2d 160 (7th Cir.1980) (per curiam).

This circuit has previously considered the strip search issue in *Dufrin v. Spreen*, 712 F.2d 1084 (6th Cir.1984). We upheld a strip search of a woman charged with a felony against fourth amendment challenge, holding that the search was reasonable under the balancing test of *Bell v. Wolfish* which counselled wide-ranging deference in security matters to prison officials. *Dufrin* distinguished *Logan* and *Tinetti* on the basis of the nature of the charged offenses, and held that the routine search was reasonable under the circumstances, including the facts that

> (a) the arrestee was formally charged with a felony involving violence, (b) that her detention was under circumstances which would subject her potentially to mingle with the jail population as a whole, and (c) that the search actually conducted was visual only, and was car-

ried out discreetly and in privacy. Where these circumstances exist, we do not believe that the sheriff is obliged, as a matter of federal constitutional law, to make a subjective evaluation of the underlying nature of the offense or to determine whether a less intrusive search may be employed.

*Id.* at 1089.

Dobrowolskyj argues that the strip search in his case violated the fourth amendment because it was an automatic search triggered only by his movement within the jail and was not based on a reasonable suspicion that he might be concealing contraband. He distinguishes *Dufrin,* arguing that the holding in that case applies only to persons charged with felonies and should not be extended to accused misdemeanants. He argues that we should follow the opinions of other circuits which have held that blanket searches of all misdemeanor detainees are unreasonable under the fourth amendment balancing test.

Dobrowolskyj's argument is not persuasive. Applying the balancing test of *Bell v. Wolfish,* we find that the security interests of the detention officials here are even stronger than they were in *Dufrin.* Looking first at the nature of the offense, Dobrowolskyj was not charged with a traffic offense or other minor misdemeanor, but with menacing, a class B misdemeanor under Kentucky law. Ky.Rev.Stat.Ann § 508.050 (Baldwin 1987) provides that "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." The statute was designed to replace common law simple assault, but was also intended to reach certain conduct which could not be reached under common law assault in some jurisdictions, such as threatening with an unloaded weapon. Ky.

Rev.Stat.Ann § 508.050 Kentucky Crime Commission Commentary (Baldwin 1987). Based on the nature of the menacing charge, the jail officials certainly had as much reason to suspect Dobrowolskyj of concealing weapons or other contraband as did the officials considering the nature of Mrs. Dufrin's charged felony. Mrs. Dufrin was arrested at her home on a warrant which charged that she had beaten her sixteen-year-old stepdaughter with a broom handle two months before the arrest.

Second, the security interests of the jail in this case were stronger than in *Dufrin* as Dobrowolskyj was not searched until he was about to be moved into contact with the general jail population. The necessity for the search was not as great in *Dufrin* as here. Conditions were such that if Mrs. Dufrin had remained at the jail she would eventually have been in contact with the general jail population, but she did not have such contact while she was detained. The jail was not crowded while she was there. She remained alone in an individual cell throughout the night and was released in the morning. Here, Dobrowolskyj did come into contact with the general jail population while he was detained at the jail, and was searched only when that contact was imminent.

This case is distinguishable in two ways from the cases in other circuits holding blanket searches of all persons detained on minor misdemeanor charges unconstitutional.[1] First, the nature of Dobrowolskyj's charged offense was different than in those cases which held automatic strip search policies unconstitutional because they included persons detained on minor traffic offenses and other misdemeanors not normally associated with weapons or other contraband. Menacing is an offense that is associated with weapons, and may

---

1. Dobrowolskyj is also in a much different procedural posture than the plaintiffs in most of the strip search cases as he is challenging the judgment of the district court after his constitutional claims were fully presented to a jury which returned a verdict against him. Almost all of the other cases involve situations where the district court granted summary judgment to the defendants after holding the search policies constitutional and the circuit court reversed the summary judgment and remanded for further proceedings, or cases where the circuit court affirmed the district court's ruling that the search policy was unconstitutional as a matter of law. Only one of these cases, *Jones v. Edwards,* 770 F.2d 739 (8th Cir.1985), held that the strip search violated the plaintiff's fourth amendment rights after a jury had returned a verdict for the defendants.

well raise reasonable suspicion on the part of the jail officials that a person detained on that charge may be concealing weapons or other contraband.

Second, and more important, Jefferson County's policy was not a blanket search of all detainees as in the policies held unconstitutional in the above cases, but a more narrowly drawn policy of searching only those detainees who were required, by force of circumstance, to be moved into the general jail population. Dobrowolskyj was not moved until he had been at the jail for several hours. The move was necessitated by the overcrowding in the front holding cell, which had been limited to a capacity of twenty prisoners by the class action consent decree in *Tate v. Frey*. There is no indication that Dobrowolskyj was moved as a pretext to search him, or for any reason other than logistical necessity. Although we do not underestimate the intrusion in Dobrowolskyj's case, this more restricted policy has a less intrusive impact on the privacy interests of all detainees than a broader blanket search policy. The search policy also provided that the searches would be conducted in private without degradation or embarassment to either the inmate or the officer.

The security interests of the jail in conducting a search at this point were strong. Dobrowolskyj was about to come into direct contact with the general jail population, including prisoners who would then be moved into all sections of the jail. The jail had legitimate interests in preventing the flow of contraband into the other sections of the jail.

The reasonableness of the search policy is also indicated by the fact that it had previously been approved by the district court in the consent decree in *Tate v. Frey*. The consent decree in this class action suit attempted to craft a search policy for Jefferson County Jail which was narrowly tailored to meet specific security needs. Applying the balancing test from *Bell*, we find that the security interests of the jail outweigh the privacy interests of the inmates in the circumstances of this case. Thus, Dobrowolskyj's search was not un-

reasonable and did not violate the fourth amendment. Accordingly, we AFFIRM the judgment of the district court.