Robert L. **RICHERSON**, Plaintiff,

v.

**LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT,** et al., Defendants.

Civil Action No. 94–337.

United States District Court, E.D. Kentucky.

Sept. 30, 1996.

Gregory A. Bolzle, Woodward, Hobson & Fulton, Louisville, KY, Mark K. Gray, O'Koon, Menefee & Gray, Louisville, KY, Christina R.L. Norris, Louisville, KY, for Robert L. Richerson.

Edward W. Gardner, Lexington–Fayette Urban County Government, Michael H. Baker, Gallion, Baker & Bray, P.S.C., Lexington, KY, for defendants.

## OPINION AND ORDER

FORESTER, District Judge.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 claiming that his civil rights were violated when he was strip searched by the defendants. Originally plaintiff complained of four separate strip searches. Plaintiff alleges in his complaint that these strip searches were unreasonable under the Fourth and Fourteenth Amendments, violated his right to privacy under the Fourth, Fifth, Ninth and Fourteenth Amendments, violated his right to equal protection under the Fourteenth Amendment, and constituted cruel and unusual punishment under the Eighth and Fourteenth Amendments. Plaintiff also alleges state law causes of action for negligence and intentional infliction of emotional distress.

A pretrial conference was held in this matter on November 13, 1995, at which time the plaintiff advised the Court that he only in-

tends to pursue his claim pertaining to the strip search conducted after his arraignment in Fayette District Court on September 7, 1993. The parties were given until November 20, 1995, to file pretrial memoranda on the plaintiff's claim regarding this post-arraignment strip-search. The Court having received the parties' memoranda, which are construed as cross-motions for summary judgment, this matter is now ripe for review.

## I. BACKGROUND

According to the joint stipulations submitted by the parties pursuant to the Court's order of November 13, 1995, plaintiff Robert L. Richerson was arrested at approximately 1:37 a.m. on September 5, 1993 for a non-violent traffic offense and taken to the Fayette County Detention Center, where he was held as a pretrial detainee. On September 7, 1995, plaintiff was taken to the Fayette District Court for misdemeanor arraignment.

Arraignments are held in Courtroom 5, located on the second floor of the Fayette District Court building, while hearings are held on the same floor in Courtroom 3. Pretrial detainees are taken to arraignments or hearings in Fayette District Court through an enclosed pedway connecting the Fayette County Detention Center with the Fayette District Court Building. The pedway is considered a secure area of the jail. A door in the pedway opens into a holding cell which is adjacent to Courtroom 5. Another door leads from the holding cell into the Courtroom. Prior to bringing detainees into the holding cell adjacent to Courtroom 5 and/or into the courtroom, detention center officers check the entire area for contraband and weapons.

In addition to supervisor Barry Lindsay, a minimum of two male detention center officers are present during the arraignments held in Courtroom 5.[1] There is also a minimum of one Court bailiff who is employed by the Sheriff's Department. One detention center officer normally stands by the door from the holding area into the courtroom, while the second officer and Lt. Lindsay are stationed in the courtroom. The detention center officers position themselves in such a

way as to quarantine off the small area where the detainees are brought into the courtroom. At no time are there more than three detainees in the courtroom at one time, two detainees in the chairs located by the detention center officers, and one at the microphone for arraignment. The corrections officers maintain the care, custody, and control of the detainees at all times during the arraignment process, and watch the detainees while they are in the courtroom.

Attorneys have access to the detainees while they are in the holding area and in the courtroom, but no other individuals have access to the detainees during the arraignment process or in the holding cell. The detainees are not handcuffed during these events. After arraignment, the detainees are placed back into the holding cell until the arraignments are completed.

The strip search consists of the detainees removing their jumpsuits and any other clothing they have on. Once naked, the detainees are made to lift up their arms, open their mouths, lift their tongues, run their fingers through their hair, turn from side to side, lift their genitals and turn around, bend over and spread their buttocks for inspection, and show the bottoms of their feet. Plaintiff was strip searched in this manner following his arraignment.

## II. SUMMARY JUDGMENT STANDARD

When the parties file cross motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994), cert. den., —— U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995), quoting *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991), quoting, *Mingus Constructors, Inc. v. U.S.*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and

---

1. When female detainees are to be arraigned, there is also one female officer present.

that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Once the moving party shows that there is an absence of evidence to support the non-moving party's case, the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Instead, he must set forth specific facts showing that there is a genuine issue for trial. *Potters Med. Center v. City Hosp. Ass'n.,* 800 F.2d 568 (6th Cir.1986). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

## III. THE MOTIONS FOR SUMMARY JUDGMENT

Although the defendants do not dispute that it is their policy to strip search all pretrial detainees returning from arraignment court who will be remaining in the facility, plaintiff contends that the defendants' policy is actually to strip search all detainees regardless of whether or not an individual detainee has secured release. According to plaintiff, the defendants' policy therefore amounts to nothing more than a blanket policy of strip searching all post-arraignment misdemeanor detainees. Plaintiff argues that under the applicable law, such a policy of strip searching all pretrial detainees charged with non-violent, misdemeanor traffic offenses is unconstitutional absent an individualized reasonable suspicion that the detainee is concealing weapons or contraband. Thus, because there was no individual assessment of reasonable suspicion in this case, plaintiff argues that the defendants violated plaintiff's rights when they subjected him to a strip search following his arraignment.

Furthermore, plaintiff argues that a blanket strip search policy cannot be justified on the basis of administrative ease in maintaining institutional security and preventing the introduction of contraband into the facility. Such a policy precludes an individualized assessment and determination of reasonable suspicion. Moreover, plaintiff contends that the mere fact that a pretrial detainee might be intermingled with the general population of the detention center is insufficient to support a policy of strip searching pretrial detainees. Finally, although defendants allege that contraband is a problem within the facility, plaintiff argues that the facts demonstrate that there is no problem with pretrial detainees introducing contraband into the facility following their arraignment. At most, plaintiff calculates that pretrial detainees returning from arraignment are involved in an estimated twelve incidents involving contraband per year.[2]

Plaintiff also argues that the fact that some detainees may speak with an attorney prior to arraignment does not make the defendants' policy or the strip search of plaintiff reasonable. In this case, plaintiff maintains that he did not speak with an attorney prior to his arraignment. Furthermore, while plaintiff acknowledges that it is possible, albeit improbable, that an attorney might pass contraband while speaking to a detainee, imputing the "contact visit" on one detainee to all detainees is illogical and unrea-

---

**2.** Plaintiff states that the 1993 executive summaries provided by the defendants show no instances during the calendar year where contraband was found during the strip search of an individual returning from arraignment court, although cigarettes were found on two felony offenders returning from circuit court and on one individual returning from work release.

sonable. Furthermore, in light of the fact that detention center officers maintain control of the detainees at all times before, during, and after the arraignment process, plaintiff contends that it is impossible for a detainee to obtain contraband in the courtroom. Thus, plaintiff contends that the mere fact that pretrial detainees leave the "secure area" of the detention center when they enter the courtroom does not provide a reasonable justification for the defendants' strip search policy in this case.

Finally, even if the defendants did make an individualized assessment as to whether plaintiff was concealing contraband prior to subjecting him to the strip search, plaintiff maintains that reasonable suspicion did not exist for such a search.

■ The defendants contend that the crucial issue in this case is the extent to which opportunity for outside contact exists when pretrial detainees are taken to the Fayette District Court building for arraignments or hearings. The defendants do not dispute that a blanket policy allowing strip searches of all pretrial detainees, including those detained on minor misdemeanor charges or traffic offenses, is unconstitutional. The defendants also acknowledge that the Sixth Circuit has held that authorities may not strip search a person arrested for a traffic violation or other nonviolent minor offense solely because such person ultimately will intermingle with the general jail population when there are no circumstances to support a reasonable belief that the person will smuggle contraband into the facility. Nevertheless, the defendants contend that the combination of factors in this case involving intermingling of detainees with the general jail population and the opportunity for outside contact support the reasonableness of their strip search policy.

The defendants argue that all the cases which have held strip search policies unconstitutional involved blanket policies which resulted in the search of all pretrial detainees at the time they initially came into the facility. The defendants thus argue that those cases are distinguishable from the present case, which involves outside contact after the detainee was already in the facility. Fur-

thermore, the defendants identify three opportunities for outside contact while in the Fayette District Court Building. First, attorneys are allowed contact with detainees while they are in the holding room. In order for the attorneys to confer with their clients in confidence, no guard is present in the room during these conversations.

The second opportunity for contact occurs when the detainee is taken from the holding area into the courtroom for arraignment. Members of the general public are allowed in the courtroom, although they are not permitted in the area where the detainees are seated. While the defendants admit that there are generally three detention center guards present in the courtroom to observe the detainees and prevent contact, and it is acknowledged that the courtroom and holding area are searched for contraband prior to the detainees being brought to the holding area, the defendants argue that there is no guarantee that no mistakes will be made or contraband overlooked. Thus, defendants contend that the possibility exists, however unlikely, for contact at this stage of the proceeding.

Finally, the defendants contend that the third opportunity for contact and the transfer of contraband occurs when the inmates brought over from the detention center for arraignment come in contact with the detainees returning from hearings in Courtroom 3. Both the arraignment detainees and the hearing detainees walk over together from the detention center to the Fayette District Court building through the enclosed pedway connecting the two buildings. In order to reach Courtroom 3, those individuals with hearings must pass through public hallways often crowded with individuals, including family members, who are present for arraignments or hearings. In returning from Courtroom 3 to the holding area, it is again necessary for the hearing detainees to pass through these public hallways. While passing through the public hallways, the defendants contend that the hearing detainees have the opportunity to come in contact with members of the general public, and it is therefore possible for a hearing detainee to obtain contraband which can be passed to an

arraignment detainee and/or smuggled back into the detention center when both groups of detainees are led back to the detention center through the pedway.

The defendants therefore insist that a pre-trial detainee has opportunities to obtain contraband because of his own outside con-tacts as well as the outside contacts of other pretrial detainees. Thus, if the detention center had a policy of not strip searching post-arraignment detainees charged with mi-nor or non-violent offenses despite the fact that they were exposed to outside contact and were to be placed in the general popula-tion, it is argued that the smuggling of con-traband into the facility would be relatively easy. For instance, the defendants argue that a hearing detainee who obtains contra-band while passing through the public hall-way, knowing that he would be strip searched upon his return to the detention center, could simply pass the contraband to an arraignment detainee on the way back to the facility, knowing that the arraignment detainee would not be searched. While plaintiff might dismiss the seriousness of this problem, the defendants counter that at-tempts to smuggle contraband into detention facilities are well documented. Further-more, while the plaintiff might argue that the policy is unnecessary in light of the few occasions when contraband was actually found on detainees returning from the Fay-ette District Court building, the defendants maintain that the incident reports document numerous instances when contraband was found in the detention center. While it is not always possible to determine how or when the contraband entered the facility, it is well recognized that when an inmate has an opportunity for outside contact, the possi-bility of contraband being smuggled into the detention center increases. Furthermore, the actual number of times contraband is found is not determinative because in addi-tion to discovering contraband, the policy is also intended to deter the smuggling of con-traband into the facility. Thus, the defen-dants assert that it is entirely reasonable for the detention center to implement a policy that calls for the strip search of those detain-ees who leave the facility and who either directly have outside contact or are exposed to other detainees who have had outside con-tact.

## IV. ANALYSIS

As correctly pointed out by the parties, the Supreme Court considered a Fourth Amend-ment challenge to strip searches involving pretrial detainees in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In reviewing the many alleged constitutional vi-olations in that case, the Supreme Court recognized that:

> the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison ad-ministrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to main-tain institutional security. Such consider-ations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordi-narily defer to their expert judgment in such matters.

*Id.* at 547–58, 99 S.Ct. at 1878–79 (citations and internal quotation marks omitted).

Turning to the question of whether strip searches could be conducted following every contact visit between an inmate, including a pretrial detainee, and a person from outside the institution absent probable cause to be-lieve that a particular inmate was concealing contraband, the Court employed the follow-ing balancing test in finding that the searches were not unreasonable under the Fourth Amendment:

> The test of reasonableness under the Fourth Amendment is not capable of pre-cise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for

initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884–85. The Court further noted, "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.* In addition, the Court pointed out that the fact that only one inmate had been "discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises." *Id.* Thus, after balancing the significant and legitimate security interests of the institution against the privacy interest of the inmates, the Court determined that probable cause was not needed prior to conducting the strip searches.

The Sixth Circuit Court of Appeals has also considered cases involving strip searches of pretrial detainees. In *Dobrowolskyj v. Jefferson County, KY.,* 823 F.2d 955 (6th Cir.1987), plaintiff-appellant Jaroslaw Dobrowolskyj was arrested on a misdemeanor charge of menacing and held at the Jefferson County Jail awaiting a lawyer to post his $100 bond. When other detainees arrived, causing the holding cell to become overcrowded, six prisoners, including Dobrowolskyj, had to be moved into the rear security area where the general jail population was housed. Dobrowolskyj challenged the department policy of strip searching prisoners prior to their move to the rear area.

In considering the strip search policy in light of the Supreme Court's decision in *Bell v. Wolfish,* the Sixth Circuit stated:

*Bell* has not been read as holding that the security interests of a detention facility will always outweigh the privacy interests of the detainees. The balancing test must be applied in each case and the particular search must still be reasonable under the fourth amendment. The majority of the circuits have held unconstitutional blanket strip search policies of all inmates including those detained only on minor misdemeanor charges or traffic offenses. These

courts have held that automatic strip searches of all detainees violate the fourth amendment without a reasonable suspicion, based on the nature of the charge, the characteristics of the detainee, or the circumstances of the arrest, that the detainee is concealing contraband.

*Dobrowolskyj,* 823 F.2d at 957.

Turning to Dobrowolskyj's argument that it should hold that blanket searches of all misdemeanor detainees are unreasonable under the fourth amendment, the Court applied the balancing test from *Bell v. Wolfish* and found that the search was not unreasonable. The Court distinguished cases from other circuits finding such blanket searches of those detained on misdemeanor charges unconstitutional on two grounds. First, the Court found that the nature of the menacing charge against Dobrowolskyj could give rise to a reasonable suspicion that the detainee was concealing contraband or weapons, and was, therefore, different from those cases involving searches of persons detained on minor traffic offenses and misdemeanors not normally associated with weapons or contraband. *Id.* at 958. The Court continued:

Second, and more important, Jefferson County's policy was not a blanket search of all detainees as in the policies held unconstitutional in the above cases, but a more narrowly drawn policy of searching only those detainees who were required, by force of circumstances, to be moved into the general jail population.

*Id.* at 959. Thus, noting that the jail "had legitimate interests in preventing the flow of contraband into the other sections of the jail," the Court found that the jail's security interests in conducting a search at that point strong.

More recently, in *Masters v. Crouch,* 872 F.2d 1248 (6th Cir.), *cert. denied,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989), the Sixth Circuit considered whether the strip search of a detainee arrested on a bench warrant for failure to appear in court on charges relating to a non-violent traffic offense violated the Fourth Amendment. The Court noted that it "found no authority approving a practice of conducting a strip search of a person arrested for a simple

traffic violation in the absence of at least reasonable suspicion that the person might be carrying a weapon, illegal drugs, or other contraband." *Id.* at 1253. The Court continued:

the Supreme Court approved a policy of conducting strip searches of pretrial detainees under certain circumstances in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). These searches were conducted following every contact visit by a detainee with a person from outside the institution. There is an obvious risk that such a visit may be used to introduce contraband into a penal institution. While the Court emphasized the wide-ranging deference to be accorded the decisions of correction officials with respect to institutional security, it clearly prescribes a test of reasonableness based upon a balancing of competing interests....

*Id.* While the Court pointed out that *Bell v. Wolfish* does not validate a blanket policy of strip searching pretrial detainees, it does authorize "particularized searches where objective circumstances indicate such searches are needed to maintain institutional security." *Id.* at 1253–54.

In considering the defendants' argument that the strip search was justified because Masters was being moved from the holding area to a cell on a different floor of the justice center, the Court noted that "several cases have recognized imminent mingling with other inmates as a consideration in the decision whether to strip search a detainee. However, the fact of intermingling alone has never been found to justify such a search without consideration of the nature of the offense and the question of whether there is any reasonable basis for concern that the particular detainee will attempt to introduce weapons or other contraband into the institution." *Id.* In conclusion, the Court noted that:

all the federal courts of appeals that have considered the issue reached the same conclusion: a strip search of a person arrested for a traffic violation or other minor of-

fense not normally associated with violence and concerning whom there is no individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband, is unreasonable.... The single fact that Mrs. Masters, for some reason, would come into contact with other prisoners was not sufficient justification for the search in this case. It did not outweigh the other factors negating any claim that such a search was reasonable in this case.

*Id.* at 1255. Thus, citing *Bell v. Wolfish*, the Court concluded that a pretrial detainee has the right not to be searched unless the reasonableness of such a search is established by balancing the need for the particular search against the invasion of personal rights occasioned by the search. Furthermore, the Court concluded that it was clearly established that a person charged with a traffic violation or other nonviolent minor offense may not be subjected to a strip search unless there are reasonable grounds for believing that the particular person might be carrying or concealing contraband.

In this case, the parties have stipulated that plaintiff was strip searched following his arraignment in Fayette District Court. Plaintiff relies primarily on *Masters v. Crouch* in urging the Court to find that, because he was only charged with a nonviolent traffic offense, the defendants were precluded from subjecting him to a strip search absent an individualized reasonable suspicion that he was carrying weapons or contraband. However, as pointed out by defendants, the search in *Masters v. Crouch* was part of the initial booking procedure. Masters was first frisked and made to open her blouse while being detained in a "holding room." After being moved to the third floor of Jefferson County Jail, she was then subjected to a full strip search. *Id.* at 1250.[3] Therefore, while plaintiff in this case was charged with a nonviolent traffic offense, the facts and circumstances surrounding the strip search here following plaintiff's arraignment are dis-

---

3. The Court also notes that *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983), cited in *Masters v. Crouch* and by the defendant, involved

strip searches of women arrested on misdemeanors who were searched while awaiting the arrival of bail money.

tinguishable from those in *Masters v. Crouch.*

Moreover, the Court is not presented in this case with a policy of strip searching all pretrial detainees, regardless of the charges against them, or solely because they are to be intermingled with the general population of the detention center. In fact, the defendants acknowledge that such a policy of strip searching all detainees, including those held on minor misdemeanor and traffic charges, is unconstitutional, as is a policy of searching a detainee charged with a nonviolent minor offense solely on the basis that the detainee is to be placed in the general population of the jail. Here, the strip search challenged took place after the plaintiff was returned to the detention center following his arraignment. Thus, the Court finds that the strip search policy in this case, rather than being a blanket policy of strip searching all detainees, is instead a more narrowly drawn policy of searching only those detainees who are arraigned and then returned to the detention center.[4] Therefore, the issue before the Court is whether the search here was reasonable under the balancing test set forth in *Bell v. Wolfish.*

■ It is clear that a detention center has a legitimate interest in preventing the flow of contraband into the facility. As previously pointed out, the Supreme Court in *Bell v. Wolfish* noted that the smuggling of contraband is "all too common an occurrence." *Bell v. Wolfish,* 441 U.S. at 559, 99 S.Ct. at 1884–85. While the plaintiff argues that the actual number of times contraband is found in the detention center is relatively insignificant, the Court is unprepared to discount the seriousness of any occurrence of contraband in a detention center. The Court is also mindful of the Supreme Court's suggestion that the lack of contraband "may be more testament to the effectiveness" of a search policy "as a deterrent than to any lack of interest on the part of inmates" to smuggle contraband when given the opportunity. *Id.* Thus, the Court is unimpressed by any argu-

ment based on the perceived lack of documented incidents involving contraband found within the detention center.

The plaintiff endeavors in his memorandum to show that the possibility of contraband being passed in the courtroom during arraignment is virtually non-existent due to the ever watchful eyes and presence of the detention center officers. Plaintiff also argues that to the extent contraband is passed by attorneys meeting their clients prior to arraignment, it is unlikely that such an occurrence happens with any frequency. While the plaintiff may be correct that the possibility of contraband being passed in the courtroom during arraignment is slight, the possibility exists nonetheless. Moreover, the defendants contend that there is a real danger in contraband being passed to detainees as they travel the public hallways on their way to hearings in Courtroom 3. It is clear to the Court that such exposure to the general public creates a grave danger of contraband being passed to detainees. It is also clear to the Court that contraband passed to the hearing detainees could easily be passed to arraignment detainees, even those charged with minor, nonviolent offenses. Thus, while the documented number of occurrences may be small, there is a clear risk that contraband will be passed to detainees while in the Fayette District Court building. The defendants' search policy is intended to address this potential problem and to deter detainees from such conduct.

■ In applying the balancing test for reasonableness from *Bell v. Wolfish,* the Supreme Court has counseled wide-ranging deference to prison officials in security matters. Nevertheless, the security interests of a detention center will not always outweigh the privacy interests of detainees. Moreover, although intermingling is a factor which is to be considered in determining the reasonableness of a search policy, as stated numerous times throughout this opinion and order the mere fact that a person charged with a non-

---

4. Although the plaintiff argues that the defendants' policy is to strip search all detainees following arraignment, including those who are to be released, the defendants contend that they only search those who will be returned to the

general population. Nevertheless, as pointed out by the defendants, the issue in this case is whether the policy was unreasonable as applied to plaintiff. Here, plaintiff was returned to the general population following his arraignment.

violent, minor offense is placed in the detention facility's general population does not in and of itself justify a policy of strip searching pretrial detainees. However, in circumstances like those presented here, where pretrial detainees, including those charged with minor, nonviolent offenses, are kept in a detention center's general population prior to arraignment, and are thereafter offenses, are kept in a detention center's general population prior to arraignment, and are thereafter put in a position where exposure to the general public presents a very real danger of contraband being passed to a detainee, a policy of strip searching the detainees upon their return from the courthouse and prior to their being placed back in the general population of the detention center is both justified and reasonable. The detention center's legitimate security interests outweigh the detainees' privacy interests in such a situation.

## V. CONCLUSION

Having considered the parties' arguments, reviewed the applicable law, and balanced the need for the particular search against the invasion of the plaintiff's personal rights, the Court finds that the post-arraignment strip search was reasonable in light of the defendants' legitimate security interest in preventing contraband from being smuggled into the detention center by detainees returning from arraignments and hearings in the Fayette District Court building. The Court further concludes that this finding that the post-arraignment strip search was reasonable is dispositive of plaintiff's remaining claims. Finally, having disposed of plaintiff's federal claims, the Court declines to exercise jurisdiction over plaintiff's remaining state law claims. Accordingly, **IT IS HEREBY ORDERED** that:

(1) the plaintiff's motion for summary judgment on plaintiff's post-arraignment strip search claim [DE # 53] is **DENIED;**

(2) the defendants' motion for summary judgment on plaintiff's post-arraignment strip search claim [DE # 54] is **GRANTED;** and

(3) summary judgment will be entered contemporaneously with this opinion and order in favor of the defendants.