Katherine REYNOLDS Plaintiff

v.

CITY OF ANCHORAGE,
et al. Defendants

No. CIV.A.3:97CV–446–H.

United States District Court,
W.D. Kentucky,
At Louisville.

Oct. 4, 2002.

Kathleen T.B. Bailey, David A. Friedman, Louisville, KY, for Plaintiff.

Jeffrey C. Mando, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, Dave Whalin, Landrum & Shouse, David Lindsay Leightty, Louisville, KY, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiff, Katherine Reynolds, filed suit against, Defendant, Officer Leslie Watson, under 42 U.S.C. § 1983 alleging that Defendant and others violated her constitutional rights during a 1997 warrantless strip search of Plaintiff and four other juveniles at the Bellewood Presbyterian Home for Children ("Bellewood"). All other Defendants have settled and only the claims against Watson remain. The basic underlying facts are undisputed and the parties have filed cross-motions for summary judgment. After having considered the issues, the Court determines that Defendant is entitled to qualified immunity.

### I.

In August 1996, the Fayette County, Kentucky Juvenile Court found Plaintiff guilty of possession of marijuana, second degree forgery, and fraudulent use of a credit card. As a result, the Juvenile Court ordered Plaintiff removed from her parents' custody and turned over to the

Kentucky Cabinet for Human Resources as a public offender. The State subsequently placed Plaintiff in Bellewood, a facility approved by the State to provide care and treatment to juveniles. Plaintiff resided in Haney Cottage while at Bellewood. Haney Cottage residents, including Plaintiff, admitted having previously used drugs while living at the cottage.

On the evening of June 8, 1997, Plaintiff and two other Haney Cottage residents went for a walk around the Bellewood grounds. Upon the girls' return, two on-duty staff persons observed the girls acting strangely and suspected that drugs might be the reason. Around this same time, Anchorage Police Officer Toby Lewis telephoned the staff members at the cottage to make sure everything was alright. The staff members shared their concern that some of the girls might be under the influence of drugs and might have drugs in their possession. Officer Lewis proceeded to Haney Cottage to assess the situation. He was joined by Officer James Ennis. Thereafter, they decided to search the residents' rooms for the presence of drugs. With the assistance of the staff members, the two officers placed the five residents in the living room of the cottage. The girls were instructed to remain in the living room with one staff member, while the two officers and the other staff member searched the girls' rooms. During the search, a third Anchorage police officer, Timothy Young, arrived on the scene. Although the room searches did not reveal the presence of actual drugs, the officers did locate several items they believed to be associated with drug use—1) a plastic baggy was located in Plaintiff's room which the officers believed may have contained drugs; 2) prescription pills were found in another resident's garbage can; 3) a baggy with a plant substance residue the officers thought might be marijuana; and 4) a glass vial which the officers believed may

have been used as a pipe were located in a third resident's room.

At some point, Plaintiff insinuated to the staff members and the officers that she might have drugs hidden in her undergarments. Plaintiff's statements coupled with the suspicious items located in the girls' rooms and their strange behavior convinced the officers that the girls needed to be searched to ensure that there were no drugs in the cottage. The male officers did not want to perform the searches themselves and decided to request the Jefferson County Police Department to dispatch a female officer to Haney Cottage for the purpose of searching the girls for drugs. Defendant was the female officer selected. Upon her arrival, Defendant observed the girls running throughout the cottage, playing loud music, and yelling. The Anchorage officers said that they had searched the girls' rooms and located what they believed to be drug paraphernalia. She was also informed that the officers suspected that the girls might be harboring drugs in their undergarments or other clothing. Defendant indicated that she could not perform a body cavity search without a warrant, but that she would perform a visual strip search of the girls to look for drugs.

Defendant conducted the searches one at a time. Each girl was searched in her own room with a female staff member present. Defendant instructed each girl to first to remove her blouse and bra, put them back on, and then to remove her bottom clothing and underwear and bend over to allow a visual inspection of her rectal area. Defendant never physically touched any of the girls during the searches. No drugs were located on any of the girls during the strip searches.

II.

■ Whether qualified immunity applies to a particular public official is a question

of law for the court to determine. *See Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir.1991). The Sixth Circuit has developed a three part analysis to evaluate claims of qualified immunity:

First, we determine whether a constitutional violation occurred [1]; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999).

■ "[T]he rationale for the qualified immunity historically granted to the police rests on the difficult and delicate judgments these officers must often make." *Foley v. Connelie*, 435 U.S. 291, 299, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978). "A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991). "If the law was not clearly established, it is impossible to find that the defendant knew that the law forbade his or her conduct." *Daugherty*, 935 F.2d at 783. Thus, the Court must determine whether the law was clearly established in 1997 that a police officer must obtain a warrant before performing a visual strip search of a juvenile residing in a state detention center where the officer had reason to suspect that the juvenile might be hiding drugs on her person. To make this deter-

mination, this Court must consult the decisions of the Supreme Court, then the decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally the decisions of other circuits. *See id.* at 784.

■ The Court begins its analysis with the Fourth Amendment. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. CONST. amend. IV. The Fourth Amendment, applied to the states via the Fourteenth Amendment, protects individuals against unreasonable searches and seizures by government officials. All warrantless searches are presumptively unreasonable. *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 603 (6th Cir.1998). However, the Supreme Court has carved out a number of exceptions to the warrant requirement. The leading exceptions are: "searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent searches, vehicle searches, container searches, inventory searches, border searches, searches at sea, administrative searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable." *U.S. v. Haddix*, 239 F.3d 766, 767 n. 2 (6th Cir.2001). Here, Defendant relies upon the "special needs of law enforcement" exception.

Plaintiff relies primarily on an unpublished Sixth Circuit opinion, *Toles v. Friedman*, 238 F.3d 424, 2000 WL 1871683 (6th Cir.2000), for the proposition that Defendant is not entitled to qualified immunity.

---

1. Because steps two and three of the analysis are dispositive of this case, the Court need not decide the difficult issue of whether Defendant's warrantless strip search actually violated Plaintiff's Fourth Amendment rights.

However, even if an officer had access to that opinion, she would be hard pressed to apply it directly in our circumstances.[2] In *Toles* three female juveniles were detained by mall security guards after trying on several bathing suits. *Id.* at *1, 238 F.3d 424. The store clerk and the security guard suspected the girls of attempting to shoplift one of the bathing suits. *Id.* As a result, the juveniles were taken to the mall security office where the security guard questioned them about his suspicions. *Id.* at *2, 238 F.3d 424. When the girls refused to admit that they attempted to steal a bathing suit, the guard requested assistance from a female security guard and a male city police officer. *Id.* The female security guard conducted a warrantless visual strip search of the juveniles for the purpose of discovering whether the girls were hiding the bathing suit underneath their clothing. *Id.* No bathing suit was found on the girls. *Id.* In holding that the defendants were not entitled to rely on the doctrine of qualified immunity the court stated that "a reasonable law enforcement officer, in the circumstances presented, could not believe that exigent circumstances justified the warrantless strip searches of the young women." *Id.* at *4, 238 F.3d 424.

■ The circumstances here are significantly different from those in *Toles*. In *Toles*, the officers relied upon the exigent circumstances exception rather than the special need or circumstance exception. The special circumstances exception permits a state actor to constitutionally conduct a warrantless search in certain situations on less than probable cause "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Vernonia School District v. Acton,*

515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). It recognizes that the basic commandment of the Fourth Amendment is that searches and seizures be reasonable, and that in certain circumstances and contexts warrantless searches are constitutionally permissible. *See New Jersey v. T.L.O.,* 469 U.S. 325, 336, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Defendant contends that the special circumstances exception is applicable here because Plaintiff was a juvenile ward of the State living in a detention center who might have drugs on her person.

While these general circumstances appear to be those which might qualify for the exception, neither the parties, nor the Court, have located any persuasive case law dealing with this exact issue from the Sixth Circuit, the Supreme Court, or any other court. Nevertheless, some decisions could act as a guide for Defendant. From an analysis of those cases the Court concludes that even an officer with perfect knowledge of the law might reasonably conclude that a warrantless strip search was permissible in these special circumstances.

For some time, warrantless searches of juveniles in school settings have been permissible under the special circumstances exception. In *New Jersey v. T.L.O.,* the Supreme Court held that a school administrator or teacher may conduct a warrantless search of a student so long as there are reasonable grounds to suspect that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. *New Jersey v. T.L.O.,* 469 U.S. at 341, 105 S.Ct. 733. The Court determined that this exception to the warrant requirement is necessary because "requiring a warrant before

---

**2.** *Toles* was not even decided until some three years after the search at issue in this case

took place.

searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.* .at 340, 105 S.Ct. 733.

In *Tarter v. Raybuck,* 742 F.2d 977 (6th Cir.1984), the Sixth Circuit found that school administrators did not violate the Fourth Amendment even when they performed a warrantless partial visual strip search of a male student, where they had reasonable cause to suspect that he might be hiding drugs on his person. The court held that: "a school official or teacher's reasonable search of a student's person does not violate the student's fourth amendment rights, if the school official has reasonable cause to believe the search is necessary in the furtherance of maintaining school discipline and order, or his duty to maintain a safe environment conducive to education." *Id.* at 982. Furthermore, in *Williams v. Ellington,* 936 F.2d 881 (6th Cir.1991), the Sixth Circuit upheld summary judgment in favor of several school administrators in a § 1983 action seeking damages from a warrantless strip search of a student. The Sixth Circuit concluded that based on the Supreme Court's decision in *New Jersey v. T.L.O,* it was not unreasonable for the principal to believe that the search was constitutional and that the defendants "were not unreasonable, in light of the item sought (a small vial containing suspected narcotics), in conducting a search so personally intrusive in nature." *Id.* at 887.

Plaintiff, being a ward of the state and in protective custody, would seem to have less expectation of privacy than a high school student. Indeed, numerous cases, recognizing the special circumstances of prisoners, detainees, and probationers, have permitted warrantless searches under the special circumstances exception. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct.

1861, 60 L.Ed.2d 447 (1979), the Supreme Court considered whether it was permissible to conduct warrantless strip and body cavity searches· of prisoners and pretrial detainees on less than probable cause after contact with outsiders. The Court concluded that the searches, including the full body cavity searches, were permissible so long as they were conducted in a reasonable manner. The Court rationalized that while such searches would normally not be allowed without a warrant supported by probable cause, the environment in which they occurred permitted some deviation from the general warrant requirement. The Court specifically pointed out that "a detention facility is a unique place fraught with serious security dangers," where the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.* at 559, 99 S.Ct. 1861.

A few years later, in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court considered whether probation officers could constitutionally conduct a warrantless search of a probationer's home. In justifying the need for such warrantless searches the Court reasoned that: "A state's operation of a probation system, like a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond mere law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 874, 107 S.Ct. 3164. The Court concluded that in the probation setting it was reasonable to dispense with the warrant requirement because "the delay inherent in obtaining a warrant would make it more difficult for probation officers to respond quickly to evidence of misconduct, and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create." *Id.* at 877, 107 S.Ct. 3164. In so holding, however, the Court specifically

pointed out that a probation officer is not "the police officer who normally conducts searches against the ordinary citizen ... [h]e is an employee of the State Department of Health and Social Services who, while assuredly charged with protecting the public interest, is also supposed to have in mind the welfare of the probationer." *Id.*

The Sixth Circuit also recognized the right of prison authorities to conduct warrantless searches of prisoners and detainees. In *Dobrowolskyj v. Jefferson County*, 823 F.2d 955 (6th Cir.1987), the Sixth Circuit held that a pretrial detainee's Fourth Amendment rights were not violated when he was searched immediately before being transferred to a situation where he would have contact with the general prison population. The *Dobrowolskyj* court rationalized: "The security interests of the jail in conducting a search at this point were strong.... [t]he jail had legitimate interests in preventing the flow of contraband into other sections of the jail." *Id.* at 959.

None of these cases would decide our question on the merits because adult prisoners are in a different environment than teenagers in a juvenile facility. However, these cases do suggest the reasonable possibility that warrantless strip searches of certain classes of detainees are permissible in special circumstances such as ours. Notwithstanding the Fourth Amendment requirement that law enforcement officers obtain warrants supported by probable cause to conduct searches, the case law in these cases allow state actors leeway to conduct warrantless searches on less than probable cause, for purposes other than general law enforcement, where special circumstances justify it. In particular, warrantless searches, including strip searches, were permissible in school and prison settings where there was some reason to suspect that drugs might be located

during the search. A reasonable officer would know the general thrust of this case law.

■ Defendant is entitled to qualified immunity so long as she acted reasonably in determining that under these circumstances the law permitted her to perform the search in question without a warrant. Police officers are entitled to immunity even if their ultimate conclusion turns out to be mistaken, so long as it was reasonable. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir.1995). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of the clearly established case law and the information he possessed." *Id.* "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.*

In this case, the Court finds it particularly relevant that Officer Watson faced the need to search wards of the state at Bellewood, a juvenile facility. A juvenile detention center or home, like Bellewood, falls somewhere on the spectrum between a school and a prison. Plaintiff was classified as a juvenile offender. Though she enjoyed substantially more freedom of movement and autonomy than an incarcerated adult, her liberty was still substantially impeded. She was not free to come and go as she pleased. Significant limitations and rules governed her daily activities at Bellewood, including a strict prohibition against drug use and drug possession. While these facts certainly do not mean that Plaintiff "shed her constitutional rights" at the cottage door, they do lessen Plaintiff's reasonable expectations of priva-

cy under the circumstances. Also, unlike the officer in *Toles*. Defendant was looking for drugs not stolen merchandise. Illicit drug use is a significant concern of and problem for juvenile facilities. The State has a unique interest in protecting their residents from the dangers of illicit drug use.

Moreover, certain specific facts reasonably heightened Officer Watson's concerns about hidden drugs. Plaintiff indicated that she might have drugs hidden on her person. Staff members had observed her acting strangely earlier that evening. The search of Haney Cottage revealed several items suspected of being drug paraphernalia. Drugs are generally small and easily concealed inside an individual's inner clothing. From these facts, it was not unreasonable for Defendant to conclude that a search was necessary both to ensure Plaintiff's safety and the safety of the other residents. Thus, it was objectively reasonable for Defendant to conclude that interests apart from those of ordinary law enforcement permitted her to conduct a warrantless strip search of Plaintiff. Finally, the type and manner of the search were objectively reasonable under the circumstances. Defendant, a female officer, searched each girl one at a time in the privacy of the girl's own room with a female staff member present. Defendant never physically touched any of the girls during the search. She declined to perform a cavity search because it was too invasive.

The Court concludes that in 1997 it was not clearly established that a search warrant supported by probable cause was required to constitutionally conduct a strip search of a minor suspected of possessing drugs in a juvenile home or detention center. Based on the particular facts, and in light of the then existing case law to guide Defendant, the Court concludes that the type and scope of the search preformed on Plaintiff were objectively reasonable. Therefore, Defendant is qualifiedly immune from suit under 42 U.S.C. § 1983. *See Johnson v. Laccheo*, 935 F.2d 109, 111 (6th Cir.1991) (holding that defendants were entitled to qualified immunity because they did not violate a clearly established right, and even if they did actually violate the law a reasonable police officer in like circumstances could have believed the conduct to be lawful).

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

The parties have filed cross-motions for summary judgment. The Court has reviewed the evidence and has filed a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED on the basis of qualified immunity and Plaintiff's motion for partial summary judgment is DENIED. Plaintiff's Complaint against defendant is DISMISSED WITH PREJUDICE.

This is a final and appealable order.